## SNYDER v. PHARO.

*(Circuit Court, D. Delaware. October 6, 1885.)*

1. SET-OFF—LAW AND EQUITY.
    Under the distinction required to be maintained in the courts of the United States between actions at law and suits in equity, in remedies, pleading, and practice, a plea of set-off which contains a purely equitable defense to an action on a promissory note, cannot be admitted, although such defense would be allowed in the state where the note was made.

2. ACCORD AND SATISFACTION.
    Satisfaction of a debt by the hands of a stranger is good when made by the authority of or subsequently ratified by the defendant; and the fact of pleading it will be sufficient evidence of ratification.

3. REPUGNANCY IN PLEADING.
    The defendant having filed with a plea of accord and satisfaction a bill of particulars, from which it appeared that the lumber, which it is alleged in the plea was delivered by the late firm of A. R. P. & Son to and received and accepted by the plaintiff in satisfaction of the defendant's note, was charged to the plaintiff on the books of the firm, and that the account showed no credits, but still remained open and unsettled, *held*, that the plea and the bill of particulars being taken and construed together, the statements set forth in them were contradictory and repugnant, and did not sustain the plea.

At Law. Demurrers.

*J. H. Hoffecker, Jr.,* and *John B. Uhle,* for plaintiff.

*John Biggs,* for defendant.

WALES, J. This is an action by the payee against the maker of a promissory note for $1,062, dated at Philadelphia, January 1, 1876, payable to the order of the plaintiff three years after date, and signed by the defendant. Among other defenses, the defendant has pleaded set-off and accord and satisfaction, and filed the same bill of particulars with each plea. The plaintiff has demurred generally to both pleas. The plea of set-off states that before and at the time of bringing the action the plaintiff was and still is indebted in a very large sum of money to the said defendant and George B. Pharo, lately trading as A. R. Pharo & Son, "out of which said sums of money so due and owing from the said plaintiff to the said defendant, the said Horatio W. Pharo and George B. Pharo, lately trading as A. R. Pharo & Son, are ready and willing, and hereby offer, to set off and allow to the said plaintiff the full amount of the said damages," etc. The bill of particulars is a copy from the books of the late firm, containing itemized charges against the plaintiff for lumber sold and delivered between March 8, 1876, and August 16, 1877, inclusive, amounting in all to $9,286.49, with interest from January 1, 1878. It is objected to this plea that it sets up an equitable defense to an action at law. On the other hand it is contended that, as the note was executed in the city of Philadelphia, (though no place of payment is named,) the *lex loci contractus* should govern the question of the validity of the plea, and that the defense now made, having been uniformly recognized and allowed by the courts of Pennsylvania, in the construction

of the statute of set-off in that state, it should also be admitted here on principles of interstate comity. *Childerston* v. *Hammon*, 9 Serg. & R. 68; *Stewart* v. *Coulter*, 12 Serg. & R. 252; *Wrenshall* v. *Cook*, 7 Watts, 464; *Craig* v. *Henderson*, 2 Pa. St. 261; *Solliday* v. *Bissey*, 12 Pa. St. 347; *Tustin* v. *Cameron*, 5 Whart. 379; *Maberry* v. *Shisler*, 1 Harr. 354, note.

The statute of Delaware restricts the plea of set-off to "mutual debts between parties to an action, due at the time of action brought, in the same right," etc.; and the facts relied on by the defendant could not be received in the courts of this state in support of this plea. Am'd Del. St. 649; *Shreve* v. *Wells*, 2 Houst. 223. The Pennsylvania statute does not directly or indirectly include the right of a defendant to set off against his separate debt one due to him and others jointly, or as copartners, with or without their consent. P. L. 537. The courts of the latter state, however, by a broad and liberal construction of the statute, have almost uniformly held that, by the authority or with the consent of all the partners, a member of a firm may avail himself of the special defense made in this case. Thus, in *Craig* v. *Henderson*, the court admits that in a suit against one member of a firm it is not permitted to set off a debt due the firm from the plaintiff because of the want of that mutuality which is essential to a set-off; but in *Wrenshall* v. *Cook* it is said that equity will, under special circumstances, allow a set-off where none can be admitted at law; and the setting off a partnership debt, with the assent of all the partners, in an action against one of them for his separate debt, is treated as being a purely equitable defense, and is allowed as such.

Two reasons have been assigned for this equitable construction: one that it may save a firm debt due from an insolvent plaintiff, and the other that it avoids circuity of action. Neither of these reasons exists here, since the plaintiff's insolvency has not been alleged, and if the set-off were allowed, the firm would still have to sue for the balance of their account. In the Pennsylvania courts both legal and equitable principles are administered through the medium of legal forms. The judge sits as chancellor, and the jury as assessors, to assist him upon the credibility of witnesses, and in reconciling conflicting testimony. *Todd* v. *Campbell*, 32 Pa. St. 252; *Robinson* v. *Buck*, 71 Pa. St. 386.

This system may be the best, the wisest, and the most direct and expeditious mode of administering justice, but the question now presented to this court is, are we at liberty to adopt the same course here and admit the defendant's plea? The question is not a new one; and the authorities leave no room for doubt as to what disposition should be made of it. One of the first cases in which the subject was considered is that of *Robinson* v. *Campbell*, 3 Wheat. 212, where it was decided that a merely equitable title could not be set up as a defense in an action of ejectment in the circuit courts of the United States, although such might be the practice in the state courts. After refer-

ring to the jurisdiction of the former courts at law and in equity, as defined and regulated by the judiciary acts of 1789 and 1792, the court say:

"The remedies in the courts of the United States are to be, at common law or in equity, not according to the practice of the state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles."

And, in *Bennett* v. *Butterworth*, 11 How. 674, the court, speaking through Chief Justice TANEY, says:

"Although the forms of proceedings and practice in the state courts have been adopted in the district courts, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit. The constitution of the United States, in creating and defining the judicial power of the general government, establishes this distinction between law and equity."

These cases are cited with approval in *Thompson* v. *Railroad Cos.*, 6 Wall. 137, and in *Van Norden* v. *Morton*, 99 U. S. 380.

Equitable defenses, though admissible under the state practice, are not admissible in United States courts. *Parsons* v. *Denis*, 2 McCrary, 359; S. C. 7 Fed. Rep. 317; *Butler* v. *Young*, 1 Flip. C. C. R. 276. In *U. S.* v. *Robeson*, 9 Pet. 325, it was decided that on common-law principles the assignment of a claim as between individuals could not be regarded as transferring to the assignee a right to bring an action at law on the account in his own name, or to plead it by way of set-off to an action brought against him. The same question was considered in *Whittenton M. Co.* v. *Memphis & O. R. P. Co.*, 19 Fed. Rep. 273, where all the authorities are collected as late as 1883.

It will be seen that an unbroken line of cases leads to the one conclusion, that under the constitutional distinction between actions at law and suits in equity, in remedy, pleading, and practice in the courts of the United States, a plea of equitable set-off to an action at law on a promissory note cannot be admitted, though such defense would be allowed in the state where the note was made.

Judgment on the demurrer for the plaintiff.

Under the plea of accord and satisfaction the defendant claims that, after the making of the note and before action was brought on it, "he, the said Horatio W. Pharo and George B. Pharo, lately trading as A. R. Pharo & Son, between March 8, 1876, and August 16, 1877, delivered to the plaintiff great quantities of lumber," etc., of the value of $15,000, in full satisfaction of plaintiff's demand, and that the plaintiff then and there received and accepted the lumber in full satisfaction and discharge of the note. The identical bill of particulars which was filed with the defendant's plea of set-off was also filed with this plea. Two objections are made to the plea: (1) That it does not aver that authority was given by the defendant to make the satisfaction, or that he subsequently ratified or consented to it; (2) that it does not aver the discharge of the plaintiff from liability for the lum-

ber charged to him on the books of the late firm, or for any part thereof.

In support of the first objection, reliance is placed on a technical rule said to have been first laid down in *Grymes* v. *Blofield*, Cro. Eliz. 541, that the matter received in satisfaction must be given by the debtor, and not by a stranger; the reason of the rule being that the third party was not privy to the original contract. On this authority the rule was adopted and followed, with more or less modification by the courts, both in England and in our own country, for a long time. It was first questioned in *Jones* v. *Broadhurst*, 67 E. C. L. 173, by Justice CRESSWELL, who not only denied the justice of the rule, but demonstrated that the accuracy of the report in Cro. Eliz. was so doubtful that it could no longer be considered of much authority as a precedent. In his opinion he cited a case in 36 H. 6, reported in Fitzh. Abr. ——, where it is said:

"If a stranger does trespass to me, and one of his relations, or any other, gives anything to me for the same trespass, to which I agree, the stranger shall have advantage of that to bar me; for, if I be satisfied, it is not reason that I again be satisfied."

*Jones* v. *Broadhurst* does not expressly determine the point, as it was not necessary to do so in that case, but none of the later English decisions adhere with any strictness to the rule, and it is quite evident from an examination of them that a plea of satisfaction by a stranger, when properly averred, would be held good. *Belshaw* v. *Bush*, 73 E. C. L. 191; *Goodwin* v. *Cremer*, 83 E. C. L. 757; *Kemp* v. *Balls*, 10 Exch. 607; *Simpson* v. *Eggington*, Id. 845.

The rule continued to be applied and enforced in this country apparently without consideration or inquiry of its justice or authority, notably in *Clow* v. *Borst*, 6 Johns. 37; *Daniels* v. *Hallenbeck*, 19 Wend. 408; *Bleakely* v. *White*, 4 Paige, 655. And as late as 1873, in *Atlantic Dock Co.* v. *Mayor*, 53 N. Y. 66. But its unsoundness and inequity were so fully exposed by BARTLEY, C. J., in *Leavitt* v. *Morrow*, 6 Ohio, 72, as to leave no justification for the further recognition of its authority. Following *Jones* v. *Broadhurst*, the chief justice attacks the origin of the rule, and concludes his able argument in these words:

"The rule laid down is purely technical, and the reason assigned that the stranger is not privy to the condition of the obligation loses all its reality when we consider that the satisfaction must have been accepted by the plaintiff and assented to or ratified by the defendant. It would seem, therefore, that a rule which in its tendency is calculated to foster bad faith and defeat the purposes of justice ought not to be adhered to simply on account of its antiquity."

The same subject is discussed in the notes to *Cumber* v. *Wane*, 1 Smith, Lead. Cas. 469, and to *Vadakin* v. *Soper*, 2 Amer. Lead. Cas. 163, in which the learned editors concur that the rule has been virtually abrogated. It is true, the plea does not aver the defendant's

authority to make the satisfaction or his subsequent ratification of it; but it is to be presumed that such authority was given at the time of the act done, and if not, the subsequent ratification by pleading will be sufficient.

As far as this objection goes the plea is a good one. But the second exception is, we think, fatal to the validity of this plea. The great disparity between the amount of the note and the value of the material which is alleged to have been delivered to the plaintiff in satisfaction, as well as the fact that the delivery was made nearly 18 months before the note became due, might be open to comment, if it was necessary for the disposition of the case. The bill of particulars filed with this plea shows an open and unsettled account on the books of the late firm against the plaintiff without the entry of any credit. The amount charged is still due and owing by the plaintiff to the firm, with interest from January 1, 1878. It is presumed that the books of the firm were regularly and fairly kept, and it is evident from them that the lumber was not originally delivered in satisfaction of the note; otherwise the note would have been credited and the account closed, or the material would have been charged to the defendant, who avers that it was delivered on his account and for his benefit. This bill is a part of the plea, and the two being construed together, contain contradictory and repugnant statements. The one is inconsistent with the other, and they neutralize each other.

The plea is bad on account of repugnancy, and judgment must therefore be given on the demurrer for the plaintiff.